1  MELINDA HAAG (CABN 132612)
   United States Attorney
2
   J. DOUGLAS WILSON (DCBN 412811)
3  Chief, Criminal Division

4  RICHARD C. CHENG (CABN 135992)
   CHINHAYI COLEMAN CADET (CABN 194542)
5  Assistant United States Attorneys

6        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
7        Telephone: (415) 436-7200
         FAX: (415) 436-7234
8        richard.cheng@usdoj.gov
         chinhayi.cadet@usdoj.gov
9
   Attorneys for United States of America
10

11                          UNITED STATES DISTRICT COURT

12                         NORTHERN DISTRICT OF CALIFORNIA

13                                 SAN JOSE DIVISION

14
   UNITED STATES OF AMERICA,            )  CASE NO. 12-00833 LHK
15                                      )
           Plaintiff,                   )  SENTENCING MEMORANDUM
16                                      )
      v.                                )  Date:   July 30, 2014
17                                      )  Time:   9:30 a.m.
   JOSE CORONA-MATA,                    )  Judge:  Honorable Lucy H. Koh
18      a/k/a "Monroy,"                 )
        a/k/a "Jose Luis Loya,"         )
19      a/k/a "Luis Jose Loya,"         )
        a/k/a "Jose Corona Mara,"       )
20      a/k/a "Evaristo Aguilar Rodriguez, )
                                        )
21         Defendant.                   )
                                        )
22                                      )
   _____)
23

24         For all of the reasons set forth below, the Government requests that the Court sentence

25  Defendant Jose Corona-Mata as agreed by the parties and as recommended by the U.S. Probation

26  Department – i.e., to 168 months of imprisonment, 5 years of supervised release, and a $200 special

27  assessment.

28

SENTENCING MEMORANDUM
CR 12-00833 LHK

## I. INTRODUCTION

### A. Indictment

On February 28, 2013, a six-count Second Superseding Indictment was filed in the Northern District of California, charging Jose Corona-Mata (hereinafter "Corona-Mata"), along with codefendants Salvador Espinoza-Patino, Pedro Carbajal-Ruvalcaba, Alejandro Espinoza DelToro, Omar Gonzalez, Marco Antonio Farias, Juan Figueroa Garcia, Julio Garcia, Jorge Alicandro Fernandez, Vianey Naranjo-Arandas, and Alondra Nayali Torres-Sanchez, with violations of 21 U.S.C. § 846 – Conspiracy to Possess With Intent to Distribute and to Distribute Methamphetamine (Count 1); 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering (Count 2); 21 U.S.C. § 841(a)(1) – Distribution of Methamphetamine (Count 3); 8 U.S.C. § 1326 – Illegal Re-entry (Count 4); 21 U.S.C. § 841(a)(1) – Distribution of Methamphetamine (Count 5); and, 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering (Count 6). A First Forfeiture Allegation under 21 U.S.C. § 853(a) incorporated Counts 1, 2, 3, and 5 by reference. A Second Forfeiture Allegation under 18 U.S.C. § 982(a)(1) for Money Laundering Forfeiture incorporated Count 2 by reference. A Third Forfeiture Allegation pursuant to 18 U.S.C. § 982(a)(1) for Money Laundering Forfeiture incorporated Count 6 by reference. Corona-Mata was charged in Counts 1 and 4 of the Second Superseding Indictment, and in the First Forfeiture Allegation.

### B. Corona-Mata's Guilty Plea

On April 9, 2014, Corona-Mata pled guilty to Counts One and Four of the Indictment, charging him with conspiracy to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), and illegal entry into the United States following deportation, in violation of 8 U.S.C. § 1326, respectively. Count One requires imposition of a mandatory minimum sentence of ten years imprisonment. Corona-Mata is ineligible for Safety Valve pursuant to U.S.S.G. § 5C1.2, due to his criminal history.

**Count One**

With respect to Count One, in pleading guilty, Corona-Mata admitted that, beginning in May of 2012, and continuing up to and including November 30, 2012, he conspired with other individuals to

SENTENCING MEMORANDUM
CR 12-00833 LHK                                                                   2

distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine in the Northern District of California. He admitted that, in furtherance of the conspiracy, on October 8, 2012, he purchased methamphetamine from his co-defendant Pedro Carbajal-Ruvalcaba (hereinafter "Carbajal-Ruvalcaba") at Corona-Mata's apartment in San Jose, California. Agents intercepted a telephone call at approximately 1:27 p.m., on October 8, 2012, during which Carbajal-Ruvalcaba called co-defendant Salvador Espinoza-Patino, a/k/a "Chava" (hereinafter "Chava") and confirmed that Carbajal-Ruvalcaba had met with "Monroy" and had given him "2 hours." "Monroy" is an alias of Corona-Mata's.

Additionally, Corona-Mata admitted that, during an intercepted telephone call on Tuesday, October 9, 2012, at 11:27 a.m., he told Chava that he was going to need "3 for Thursday afternoon." Chava agreed, and confirmed that "it was for Thursday at 6 for the 3." The next day, Corona-Mata again spoke with Chava, and during an intercepted telephone conversation, Corona-Mata said that he "was calling [Chava] to remind him about tomorrow afternoon." Chava asked if Corona-Mata "had said for 6:00," and Corona-Mata agreed. On Thursday, October 11, 2012, Corona-Mata drove from San Jose, California, to Tulare, California, to complete the methamphetamine purchase. On Thursday, October 11, 2012, at approximately 10:25 a.m., agents intercepted a telephone call between Chava and Carbajal-Ruvalcaba, during which Chava confirmed that Carbajal-Ruvalcaba was meeting Corona-Mata at 6:00 p.m. At approximately 6:31 p.m., agents intercepted a call during which Chava asked Carbajal-Ruvalcaba where he was. Carbajal-Ruvalcaba replied that he was arriving at the place he was meeting Corona-Mata. At approximately 6:35 p.m., agents observed Carbajal-Ruvalcaba pull into a restaurant parking lot located in Tulare, California. At approximately 6:42 p.m., Corona-Mata pulled out of the same lot, and Carbajal-Ruvalcaba left as well. During the October 11, 2012 meeting, Corona-Mata purchased methamphetamine from Carbajal-Ruvalcaba.

Corona-Mata was arrested on November 30, 2012, at his residence at 1463 Eden Avenue, Apartment #3, in San Jose, California. Pursuant to a search warrant, Corona-Mata's home was searched. Agents found two phones that Corona-Mata identified as his. The telephone numbers associated with these two phones were the same two phone numbers identified on the wiretap as used by "Monroy." One phone also had "Chava" listed as a contact. In the home, agents found $92,574 and pay/owe sheets.

The methamphetamine seized as evidence of the conspiracy in this case ranged between 97-99% pure. Corona-Mata agrees and stipulates that the total amount of actual methamphetamine attributable to him for purposes of relevant conduct is more than 1.5 kilograms.

**Count Four**

With respect to Count Four, in pleading guilty, Corona-Mata admitted that he is a citizen of Mexico and is not, nor have he ever been, a citizen of the United States.  Corona-Mata admitted that he was previously deported from the United States to Mexico five times, on August 27, 2003; September 4, 2003; September 23, 2005; November 10, 2009; and May 16, 2011.  He admitted that, on May 12, 2010, he was convicted for a violation of California Health and Safety Code Section 11378, felony possession of a controlled substance for sale, and that he was sentenced to 2 years in prison.  He admitted that, at some point between May 16, 2011, and November 30, 2012, he knowingly and voluntarily reentered the United States.  At the time of his reentry into the United States, he was an alien.  On or about November 30, 2012, he was found in the United States, when law enforcement arrested him in his apartment in San Jose, California.  Corona-Mata admitted that he has never applied for or received the consent of the Attorney General, the Secretary of the Department of Homeland Security, or any representatives of that department to return to the United States.

**II.     SENTENCING GUIDELINES CALCULATIONS**

Given that Corona-Mata is responsible for more than 1.5 kilograms of actual methamphetamine, his Base Offense Level is 38.  *See* U.S.S.G. § 2D1.1(a)(5), (c)(1).  As Corona-Mata has pled guilty, he is entitled to a 3-level reduction for acceptance of responsibility.  *See* U.S.S.G. § 3E1.1.  Consequently, Corona-Mata has a Total Offense Level of 35.  Corona-Mata has five criminal history points, resulting in a Criminal History Category of III.  A Total Offense Level of 35 and a Criminal History Category III results in an advisory Guidelines range of 210-262 months imprisonment.  Thus, a sentence of 210 months of imprisonment is a low-end Guidelines sentence under the currently existing Guidelines structure.

On January 9, 2014, the United States Sentencing Commission (USSC) voted to publish proposed amendments to the guidelines, including possible reductions for drug trafficking offenses.  The

proposed amendments call for a two-point reduction in the drug offense levels across drug types.  On April 10, 2014, the USSC voted to adopt these amendments.  Unless Congress acts to disapprove some or all of the amendments, they will go into effect November 1, 2014.  Thus, under the adopted amendments, Corona-Mata's Total Offense Level would be reduced from 35 to 33.  A Total Offense Level of 33 and Criminal History Category III results in an advisory Guidelines range of 168 to 210 months imprisonment.  Consequently, if the Court grants a downward variance consistent with the promulgated amendment, a sentence of 168 months of imprisonment would be a low-end Guidelines sentence under the anticipated future Guidelines structure.

For all of the reasons explained below, under the sentencing guidelines and Section 3553(a), a sentence of 168 months is appropriate in this case.  The sentencing goals of deterrence, promoting respect for the law, reflecting the seriousness of the offense, and providing just punishment, are met with this proposed sentence.  A sentence of 168 months takes into account the significant drug quantity, as well as Corona-Mata's engagement in this conduct despite having previously sustained felony drug convictions.

### III.    STATUTORY SENTENCING FACTORS

Under the Sentencing Reform Act as modified by *United States v. Booker*, 543 U.S. 220 (2005), this Court must analyze and consider the guideline factors before imposing sentences in federal criminal cases.  *Booker*, 543 U.S. at 259 (noting that the Sentencing Reform Act "nonetheless requires judges to take account of the Guidelines together with other sentencing goals"); *see also United States v. Cantrell*, 433 F.3d 1296, 1279 (9th Cir. 2006)(noting that the "[c]ontinuing duty of district courts to consult the Guidelines is statutory").  This Court, having calculated the guideline range, should then look to the factors set forth by Congress in 18 U.S.C. § 3553(a) to determine a reasonable sentence for Defendant.

The investigation in the current case led to the seizure of more than 700 pounds of crystal methamphetamine.  Corona-Mata was a large quantity purchaser of methamphetamine in the drug conspiracy in this case.  The present case is not Corona-Mata's first conviction for a drug offense.  Corona-Mata's criminal history involves previous methamphetamine conspiracy arrests, including a 2010 conviction that involved 140 pounds of methamphetamine.  He was sentenced to 2 years in prison

for his 2010 conviction. He was deported from the United States (for the fifth time) on May 16, 2011. At some point between May 16, 2011 and November 30, 2012, he illegally re-entered the United States. Beginning in May 2012, the defendant engaged in the offense conduct that brings him before the Court in this case. His previous jail sentences and deportations apparently had little impact on him, as he illegally re-entered the United States shortly after his last deportation, and he returned to the business of methamphetamine distribution.

A sentence of 168 months is appropriate in this case, given the nature and circumstances of the offense and the history and characteristics of this defendant. This sentence accounts for the 3553 factors of the Illegal Re-Entry violation with five previous deportations, and Corona-Mata's involvement with two large scale methamphetamine distribution conspiracies. As the proposed sentence is a low-end Guidelines sentence, it accounts for the mitigating factors, including the defendant's lack of education and his possible developmental difficulties. A sentence of 168 months in custody is sufficient but not greater than necessary to provide just punishment, to provide needed correctional treatment, to promote respect for the law, and to serve as a deterrent to this defendant and others, as contemplated under 18 U.S.C. § 3553(a).

## IV.  CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court, taking into consideration the Sentencing Guidelines and the factors set forth in Section 3553(a), sentence Defendant Jose Corona-Mata as agreed by the parties and as recommended by the U.S. Probation Department – i.e., to 168 months of imprisonment, 5 years of supervised release, and a $200 special assessment.

DATED: July 23, 2014                                          Respectfully submitted,

                                                              MELINDA HAAG
                                                              United States Attorney

                                                    /s/
                                                              CHINHAYI COLEMAN CADET
                                                             Assistant United States Attorney